UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10009-RWZ

CHUAN WANG

v.

MARTIN J. SCHROETER, *et al.*

ORDER

December 9, 2011

ZOBEL, D.J.

Pro se plaintiff Chuan Wang brings this action against CDI Corporation ("CDI"), and individual defendants Martin Schroeter, J. Randall MacDonald, Samuel Palmisano, Mark Loughridge, Robert Weber, Jesse Greene, Jr., and Ranjini Poddar for conduct arising out of an alleged employment relationship between plaintiff, International Business Machines, Corp. ("IBM"), and Artech Information Systems LLC ("Artech").[1] CDI's main business office is located in Philadelphia, Pennsylvania (Docket # 19 ¶ 9). Each individual defendant is an officer of either IBM or Artech and has a primary place of business located outside of Massachusetts (Docket # 19, ¶¶ 2-9).[2]

As discussed below, plaintiff has filed four complaints in this matter. The Amended Complaint (Docket # 14) and the Second Amended Complaint (Docket # 19) each assert the same nineteen counts, many of which are repetitive. For clarity and

---

[1] In the case caption, Wang also lists as defendants IBM, Artech, and "John Does 1-20 and Jane Does 1-20." However, the body of the complaint neither mentions these entities as parties, nor lists any counts against them.
[2] Since plaintiff invokes, and defendants do not dispute, the court's diversity jurisdiction, I also assume that the defendants are not citizens of Massachusetts.

ease of discussion, I organize the claims as follows. Against CDI: (1) negligence for IBM's failure to hire plaintiff (Count 10); (2) violation of "Federal and Massachusetts Wage Laws" for failure to pay wages for services rendered (Count 11).

Against the individual defendants: (1) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and Mass. Gen. Laws chs. 149 and 151, for failure to pay plaintiff due wages and overtime, and for retaliation through wrongful discharge and/or refusal to hire him (Counts 1, 3-5, 12-13, 19); (2) violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and Mass. Gen. Laws ch. 151B for discrimination because of his age, race, and national origin (Counts 2, 6, 18); (3) contravening common law public policy doctrine by violating the foregoing federal and state statutes (Counts 7, 9); (4) negligence for failure to pay due wages (Count 8); (5) violation of Mass. Gen. Laws ch. 62B, § 2, ch. 151A, § 14, and ch. 152, § 25A, for failure to withhold state income tax, make unemployment insurance contributions, or provide workers' compensation insurance (Counts 14-16); and (6) violation of 26 U.S.C. § 3102, purportedly for failure to "withhold Federal income taxes, and pay Social Security and Medicare contributions and other tax and employment related obligations" (Count 17).

CDI moves to dismiss all claims against it for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Docket # 8).[3] The individual defendants move to dismiss all claims

---

[3] As explained below, CDI filed its motion to dismiss (Docket # 8) in response to the original Complaint (Docket #1), which asserted only one count (Count 10) against it. CDI did not re-file its motion after plaintiff filed subsequent complaints without seeking leave of the court. These later complaints assert two counts against CDI (Counts 10 and 11). Although CDI did not address Count 11 in its motion to dismiss, one of the arguments in its supporting memorandum of law (Docket # 9) applies with equal force to, and is dispositive of, this count. I thus consider CDI's motion to dismiss both counts alleged against it in the Second Amended Complaint, which I adopt as the operative complaint. See infra note 7.

2

against them for lack of personal jurisdiction, improper claim splitting, and failure to state a claim under Fed. R. Civ. P. 12(b)(6).[4] Disposition of these motions, as well as all other outstanding motions,[5] follows.

**I. Procedural Background**

Plaintiff filed the original Complaint on January 4, 2011 (Docket # 1). Defendants MacDonald and CDI Corporation each filed a motion to dismiss that Complaint on March 15 and March 16, 2011, respectively (Docket ## 6, 8). On March 29, 2011, plaintiff filed his opposition to these motions (Docket ## 11-13), as well as an "Amended Complaint" against all defendants (Docket # 14). Defendants MacDonald and Loughridge filed their respective motions to dismiss all claims in the Amended Complaint on April 12 and April 24, 2011 (Docket ## 15, 17). Then, on April 26, 2011, plaintiff filed an "Amended Complaint 2nd" against all defendants (Docket # 19) ("Second Amended Complaint").

On May 6, 2011, defendants MacDonald and Loughridge jointly moved to strike the Second Amended Complaint (Docket # 23). Defendant Poddar and the remaining individual defendants filed their respective motions to dismiss on May 18, 2011 (Docket ## 38, 40).[6]

---

[4] Defendants MacDonald, Loughridge, and Poddar each filed a separate motion to dismiss (Docket ## 15, 17, and 38, respectively). The remaining individual defendants—Schroeter, Palmisano, Weber, and Greene—filed a joint motion to dismiss (Docket # 40). Since each individual defendant adopts the arguments made in MacDonald's motion and supporting memorandum of law (Docket # 16), I consider their motions collectively.

[5] See Docket ## 21-23, 25, 41, 46, and 48, addressed below.

[6] It is unclear whether their motions address the Amended Complaint or the Second Amended Complaint. This ambiguity is immaterial, however, since their arguments apply equally to the Second Amended Complaint, which I adopt as the operative complaint. See infra note 7.

3

Plaintiff has since moved to file a fourth version of the complaint, to add IBM and Artech as defendants and "Others Similarly Situated" as plaintiffs (Docket # 48). He has also moved for sanctions against MacDonald (Docket # 25) and the remaining individual defendants (Docket # 46) for failure to waive service of process under Fed. R. Civ. P. 4.

**II. Factual Background**

When evaluating defendants' motions to dismiss, I consider as true the facts alleged in the Second Amended Complaint (Docket # 19).[7] Plaintiff is a 55-year old Chinese-American. Id. ¶ 13. In February 2008, he received an email from Vishwadeep Sharma at Artech soliciting work for Artech and IBM. Id. ¶ 15. Artech arranged for "a team" from IBM to interview him on February 22, 2008. Id. ¶ 16. That same day, Artech informed him that he had gotten the job with IBM and forwarded him an "Employment Agreement proposed by Artech." Id. ¶ 17.

"Plaintiff believed that many terms in said Employment Agreement are unlawful and unfair, therefore, unacceptable." Id. ¶ 18. Artech told him that he was to work "full-time, 8 hours per day, exclusively for IBM" and that any overtime must be approved in advance by his supervisor at IBM. Id. ¶ 19. Artech also told him that he was an

---

[7] Defendants MacDonald and Loughridge move to strike the Second Amended Complaint because plaintiff failed to obtain leave of the court before filing, as required by Fed. R. Civ. P. 15(a). Given Rule 15(a)(2)'s instruction to "freely give leave when justice so requires" and the relative latitude afforded a pro se plaintiff, I grant the plaintiff leave to file the Second Amended Complaint (which is actually the third complaint filed). Even as amended, however, as discussed herein, the Second Amended Complaint fails to survive defendants' motions to dismiss.
   I deny plaintiff leave to file a fourth complaint (Docket # 48), both because it is excessive and because plaintiff may not represent a class. Ziegler v. State of Michigan, 90 Fed. Appx. 808, 810 (6th Cir. 2004) (non-attorney pro se plaintiff may not adequately represent a class); Fymbo v. State Farm Fire & Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000) (same).

"exempt employee because his works were computer related," and that he was not entitled to overtime pay. Id. ¶ 20.

Apparently in spite of his feelings about the employment agreement, between February and April 2008, "plaintiff provided services of more than 158 hours for Artech." Id. ¶ 21. For fourteen days, from March 11-28, 2008, he "performed a full-time service under the direction and control of IBM, and exclusively for IBM." Id. ¶ 22. Although he spent more than 112 hours to perform this work, he "claim[ed]" only "8 hours per day [for fourteen days], 112 regular hours in total" because he believed that "his overtime works were not approved in advance and assumed he was an exempt employee." Id. ¶ 23.

His "work was terminated by the defendants" on March 28, 2008. Id. ¶ 24. He has not been paid for his services despite his repeated requests. Id. ¶ 27, 29. Since his termination, he has been unemployed and has not received unemployment benefits since April of 2008 because "the defendants made no contribution to unemployment insurance" on his behalf. Id. ¶ 25-26. Between April and December 2008, he applied and was interviewed for several job openings at IBM. Id. ¶ 31. Some of those interviews were arranged for him by CDI. Id. ¶ 119. IBM did not hire him. Id. ¶ 32.

Plaintiff then filed several complaints against defendants, including for: (1) age discrimination with the U.S. Equal Employment Opportunity Commission on January 13, 2009, id. ¶ 33; (2) employment discrimination with the Massachusetts Commission Against Discrimination on March 16, 2009, id. ¶ 36; and (3) "employment retaliation"

5

with the Massachusetts Attorney General's Office, id. ¶ 37. He continued to apply for jobs with IBM after filing these complaints, but to no avail. Id. ¶ 35.

He also filed a complaint against IBM and Artech in the Concord District Court on February 12, 2009. Id. ¶ 34.[8] The complaint was dismissed in June 2009 because his demand amount exceeded the jurisdictional threshold for district court actions set forth in Mass. Gen. Laws ch. 218, § 19A. Id. ¶ 40. The dismissal was affirmed by an appeal and held to be without prejudice. Wang v. International Business Machines, Corp., 76 Mass. App. Ct. 1123 (2010) (unpublished pursuant to rule 1:28). On November 25, 2009, he filed a complaint in Massachusetts Superior Court, this time against IBM, Artech, Palmisano, Loughridge, and Poddar (Docket # 19 ¶ 42). On September 30, 2010, the Superior Court granted the motions to dismiss of defendants Loughridge, Palmisano, and Poddar for lack of personal jurisdiction. Id. ¶ 43. The state court action against IBM and Artech is pending. Id. ¶ 44.

**III. Analysis**

   **A. CDI**

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). The facts

---

[8] Giragosian v. Ryan, 547 F.3d 59, 65-66 (1st Cir. 2008) (when ruling on motion to dismiss, court may take judicial notice of matters of public record such as documents from prior state court adjudications).

6

pleaded must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not suffice. Id.

Plaintiff asserts two counts against CDI: negligence (Count 10)[9] and "violation of Federal and Massachusetts Wage Laws" (Count 11). As to the former, he essentially seeks to hold CDI liable because IBM did not hire him. He pleads no facts in support of his contention that CDI was his "employer" or that CDI was under a duty to guarantee that he receive an offer of employment. Plaintiff simply fails to allege any actual duty owed by CDI to plaintiff, much less a breach of such duty. Consequently, Count 10 fails to state a claim.

Count 11 is even sparser. Plaintiff fails to identify which "Federal and Massachusetts Wage Laws" CDI has violated. Even assuming that he is referring to the FLSA and Mass. Gen. Laws chs. 149 and 151, he pleads no facts describing what work he did for CDI and why he was entitled to compensation. He merely alleges that he "performed services for CDI between April and December of 2008" and that "CDI failed to pay [him] for his services" (Docket # 19 ¶¶ 124-25). These bare and vague allegations are insufficient to state a claim.

**B. Individual Defendants**

    **1. Standard**

---

[9] Plaintiff makes the following allegations in support the negligence claim: (1) CDI arranged job interviews for him with IBM, id. ¶ 119; (2) "CDI was an employer of Plaintiff," id. ¶ 120; (3) CDI owed him "a duty, under the Federal and State employment laws, for Plaintiff not to be injured during [the] employment engagement," id.; (4) CDI "breached its duty to Plaintiff as IBM repeatedly rejected Plaintiff's work applications to retaliate [against] Plaintiff for seeking his rights provided by the [FLSA, ADEA,] and Massachusetts Employment Laws," id. ¶ 121; (5) "CDI's breach caused plaintiff to suffer economic damages, including loss of income." Id. ¶ 122.

7

The individual defendants move to dismiss all claims against them for, among other things, lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).[10] The plaintiff bears the burden of making a prima facie showing that the court has personal jurisdiction over a defendant. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50-51 (1st Cir. 2002).

Plaintiff's claims invoke both the court's federal question and diversity jurisdiction. 28 U.S.C. §§ 1331-32. To make a prima facie showing of personal jurisdiction in diversity cases, the plaintiff must (1) establish that the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3,[11] grants jurisdiction; and (2) satisfy the Due Process clause of the Fourteenth Amendment by showing that a defendant has "minimum contacts" with Massachusetts. Daynard, 290 F.3d at 52.

The court's jurisdiction over a defendant may be either "specific" or "general." U.S. v. Swiss Am. Bank, 274 F.3d 610, 618 (1st Cir. 2001) (internal quotation marks and citations omitted). "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." Id. For the court to have specific jurisdiction, among other things, a defendant's in-state contacts must represent a "purposeful availment of the privilege of conducting activities in the forum state. . . ." Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998). "General

---

[10] Because I grant the individual defendants' motions to dismiss on the grounds of lack of personal jurisdiction, I do not address their arguments regarding improper claim splitting or failure to state a claim under Fed. R. Civ. P. 12(b)(6).

[11] In relevant part, the long-arm statute grants a court personal jurisdiction "over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth; . . . (c) causing tortious injury by an act or omission in this commonwealth; [or] (d) causing tortuous injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth[.]" Mass. Gen. Laws ch. 223A, §§ 3(a), (c)-(d).

8

jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." Swiss Am. Bank, 274 F.3d at 618.

The personal jurisdiction inquiry in federal question cases differs from the inquiry in diversity cases. Id. In federal question cases, the Due Process Clause of the Fifth Amendment (not the Fourteenth Amendment) requires only that defendants have minimum contacts with the United States as a whole rather than with a particular state. Id. Nevertheless, for the court to exercise personal jurisdiction, service of process must still be grounded in a federal statute or rule. Swiss Am. Bank, 274 F.3d at 618; see also United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085 (1st Cir. 1992)(same; describing "process" as the "vehicle by which the court obtains jurisdiction"); Robertson v. Railroad Labor Bd., 268 U.S. 619, 622 (1925) (a federal court cannot acquire personal jurisdiction over a defendant unless the defendant is properly served with process).

An out-of-state defendant in a federal question case may properly be served if the federal statute conferring jurisdiction provides for nationwide service of process. Fed. R. Civ. P. 4(k)(1)(C) ("serving a summons. . . establishes personal jurisdiction over a defendant when authorized by a federal statute"). However, if a federal statute is silent on nationwide service of process—as is the case here[12]— Fed. R. Civ. P.

---

[12] Neither the FLSA nor the ADEA contemplates nationwide service of process. See Swain v. Moltan Co., 73 F.3d 711, 720 (7th Cir. 1996)(ADEA); Aviles v. Kunkle, 978 F.2d 201, 203-04 (5th Cir. 1992)(FLSA) (citing Omni Capital Int'l v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 106 (1987) (declining to infer nationwide service of process under federal statute where Congress has not expressly provided for such)).

9

4(k)(1)(A) requires that service of process be determined by the state long-arm statute.[13]

The Massachusetts long-arm statute provides for service of process on an out-of-state defendant if the court has personal jurisdiction over the defendant under the long-arm statute. Mass. Gen. Laws ch. 223A, § 4. Thus, I must conduct the same personal jurisdiction inquiry, and concomitant "minimum contacts" analysis, regardless of whether the claims give rise to diversity or federal question jurisdiction.[14] See Catrone v. Ogden Suffolk Downs, Inc., 647 F.Supp. 850, 855 (D. Mass. 1986)(in federal question cases, "'minimum contacts' acts as a restraint on personal jurisdiction—not as a matter of Fifth Amendment due process, but rather indirectly as a matter of the directive of [Fed. R. Civ. P. 4] to look to the state's long arm statute"); Johnson Creative Arts, Inc. v. Wool Masters, Inc., 743 F.2d 947, 950 (1st Cir. 1984) (it is not constitutional concerns of due process which impose "minimum contacts" as a limitation on the federal courts in federal question cases; rather, the reference in the Federal Rules of Civil Procedure to the state long-arm statutes "incorporates the requirement of minimum contacts as a precondition for extraterritorial service of process").

### B. Application

---

Plaintiff also purports to bring a claim under the Federal Insurance Contributions Act ("FICA"), a portion of which is codified at 26 U.S.C. § 3102. Since no private right of action exists under FICA, McDonald v. Southern Farm Bureau Life Ins. Co., 291 F.3d 718, 723 (11th Cir. 2002), it is not necessary for me to determine whether the statute authorizes nationwide service of process.

[13] Fed. R. Civ. P. 4(k)(1)(A) provides: "Serving a summons . . . establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]").

[14] Plaintiff cites to Nahigian v. Leonard, 233 F.Supp. 2d 151, 158 (D. Mass. 2002) for the proposition that, in federal question cases, minimum contacts with the United States (and not Massachusetts) are sufficient to establish personal jurisdiction over an out-of-state defendant. Nahigian involved a challenge under ERISA, which provides for nationwide service of process, id. at 158-59, unlike the federal statutes at issue here.

Plaintiff argues that each individual defendant has "minimum contacts" with Massachusetts because each is an officer of either IBM or Artech, corporations that "conduct" or "transact" business in Massachusetts and caused him "tortuous injury" by failing to pay for his services performed in Massachusetts. See, e.g., Docket # 37, at 5-6; Docket # 35 at 5-6; Docket # 43 at 9-10. Even if the court has personal jurisdiction over IBM and Artech, a defendant's status as a corporate officer alone is insufficient to show the minimum contacts required to establish personal jurisdiction over him. See Roy v. Roy, 715 N.E.2d 70, 71 (Mass. App. Ct. 1999)(defendant's status as officer or director of a Massachusetts corporation is insufficient to establish minimum contacts); M-R Logistics, LLC v. Riverside Rail, LLC, 537 F.Supp.2d 269, 279 (D. Mass. 2008) ("It is axiomatic that jurisdiction over the individual officers of a corporation may not be based on jurisdiction over the corporation.").

Rather, the proper inquiry is whether the individual defendant was "a primary participant in the alleged wrongdoing intentionally directed at the forum." La Vallee v. Parrot-Ice Drink Products of America, Inc., 193 F.Supp.2d 296, 301 (D. Mass. 2002) (citing Calder v. Jones, 465 U.S. 783, 790 (1984)). "This necessarily entails an inquiry, under general principles of agency law, of whether an officer . . . derived personal benefit from [his] contacts in Massachusetts and/or acted beyond the scope of [his] employment." M-R Logistics, 537 F.Supp.2d at 280.

Plaintiff mentions each individual defendant by name in the complaint only once: when describing him or her as an officer of either IBM or Artech.[15] While he pleads specific factual allegations against IBM and Artech, he pleads no facts regarding conduct by an individual defendant. Allegations that "defendants" failed to pay plaintiff, id. ¶ 27, or that plaintiff was terminated by "defendants," id. ¶ 24, are insufficient to hold the individual defendants.

Further, plaintiff pleads no facts alleging that any individual defendant either "purposefully availed" him or herself of the privileges of doing business in Massachusetts, or was a "primary participant" in the failure to pay him benefits, his termination, or other alleged wrongdoing. He also does not allege that any individual defendant derived a personal benefit from any contact with Massachusetts or acted outside the scope of his or her employment. In short, plaintiff shirks his burden of establishing facts sufficient to sustain specific jurisdiction over the individual defendants.

He likewise fails to allege facts supporting the exercise of general jurisdiction. The lone allegation that "all [defendants] do business in [Massachusetts]"—especially given the deficiencies in the pleading described above—hardly makes out a prima facie case that any individual defendant engaged in the "continuous and systematic activity" in Massachusetts required for general jurisdiction. Because the court lacks personal jurisdiction over the individual defendants, all claims against them are dismissed.

---

[15] See, e.g., Docket # 19 ¶ 3 ("Defendant, J. Randall MacDonald, is Senior Vice President of IBM, who has the working office at 1 New Orchard Road, Armonk, New York 10504."); id. ¶ 8 ("Defendant, Ranjini Poddar, is President of Artech Information Systems LLC ("Artech"), who has the working office at 240 Cedar Knolls Road, Suite 100, Cedar Knolls, New Jersey 07927.").

**IV. Conclusion**

Defendants' motions to dismiss (Docket ## 8, 15, 17, 38, 40) are ALLOWED. The docket shall reflect that defendant MacDonald's motion to dismiss the original Complaint (Docket # 6) is terminated because it was superseded by his subsequent motion to dismiss the Amended Complaint (Docket # 15). Plaintiff's motion to file the Second Amended Complaint (Docket # 19) is ALLOWED. Plaintiff's motion to file a fourth complaint (Docket # 48) and his motions for sanctions (Docket ## 25, 46) are DENIED. Plaintiff's motions for extension of time (Docket ## 21-22, 41) are terminated as moot.

Judgment may be entered dismissing the complaint.

|  |  |
|---|---|
| December 9, 2011 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |